UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAMANTHA LONG,

                            **Plaintiff,**

  vs.                                                      1:24-cv-00466
                                                                 (MAD/CFH)

JESSICA BYRNE and THE TOWN OF
NEW LEBANON,

                            **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**COOPER ERVING & SAVAGE LLP**       **PHILLIP G. STECK, ESQ.**
20 Corporate Woods Boulevard - Suite 501
Albany, New York 12211
Attorney for Plaintiff

**MURPHY BURNS LLP**                  **STEPHEN M. GROUDINE, ESQ.**
407 Albany Shaker Road
Loudonville, New York 12211
Attorney for Defendant Jessica Byrne

**ROEMER WALLENS GOLD & MINEAUX**   **EARL T. REDDING, ESQ.**
**LLP**
13 Columbia Circle
Albany, New York 12203
Attorney for Defendant Town of New Lebanon

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        On April 3, 2024, Plaintiff Samantha Long ("Plaintiff") commenced this action against Defendants Jessica Byrne ("Byrne"), in her personal and official capacities, and the Town of New Lebanon ("the Town," collectively with Byrne, "Defendants"), pursuant to 42 U.S.C. § 1983 and New York State Civil Service Law § 75-b ("Section 75-b"), seeking to redress alleged violations

of her First Amendment rights and for whistle blower retaliation. *See* Dkt. No. 1; Dkt. No. 13. On June 28 and July 15, 2024, Byrne and the Town, respectively, filed pre-answer motions to dismiss Plaintiff's amended complaint. *See* Dkt. Nos. 16, 17. Plaintiff opposed Defendants' motions and cross-moved for permission to file a late notice of claim. *See* Dkt. No. 18. Defendants opposed the cross-motion, *see* Dkt. Nos. 19, 20, and Plaintiff was permitted to file a brief sur-reply. *See* Dkt. Nos. 22, 23. For the reasons set forth below, Defendants' motions to dismiss are granted, and Plaintiff's cross-motion is denied.

## II. BACKGROUND[1]

Plaintiff was employed as the Clerk of the Town Justice Court for the Town of New Lebanon from May 2019 to January 2, 2024. *See* Dkt. No. 13 at ¶¶ 5, 9, 27. Every year, up to and including 2023, Plaintiff's performance evaluation included "high praise for her performance as Town Court Clerk." *Id.* at ¶ 10. Byrne, who, at the time was a Town Justice, "even said that [P]laintiff was the best Court Clerk she ever had." *Id.* at ¶¶ 6, 11. "Sometime before July 2023, a person filed an anonymous Judicial Ethics Complaint against . . . Byrne with the New York State Commission on Judicial Conduct" ("the Commission"). *Id.* at ¶ 14. And, in July 2023, a representative from the Commission came to Plaintiff's office and requested "case files on [four] individuals in connection with [the] complaint" against Byrne. *Id.* at ¶ 15. Plaintiff complied with the Commission representative and turned over all of the material requested, "[a]s required

---

[1] The facts recited herein are drawn from Plaintiff's amended complaint. Plaintiff has submitted additional information regarding former Town Justices John Nevers' and Byrne's stipulations with the Commission on Judicial Conduct to resign amid allegations of improper judicial conduct. *See* Dkt. Nos. 18-3, 29. Although such evidence may bolster Plaintiff's claims at another stage, it is improper for the Court to consider matters outside of the pleadings when ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988). Accordingly, for the purposes of this motion, such evidence, which is outside of the amended complaint, has not been considered.

by law." *Id.* The representative advised Plaintiff that "she was not permitted to discuss the investigation with anyone," including Byrne. *Id.* at ¶ 16.

Thereafter, on November 30, 2023, Byrne "came into the office angry, saying that she was being investigated by the Commission." *Id.* at ¶ 17. Byrne was angry because Plaintiff did not tell Byrne the identity of the person who filed the complaint. *Id.* Plaintiff responded that she "had no idea who made the complaint," and informed Byrne that the Commission's representative advised Plaintiff "not to speak of [the complaint] to anyone[,] including Byrne." *Id.*

On December 1, 2023, Plaintiff "wrote end of the month checks" for the Town Justices (Byrne and Nevers) to sign, "as [P]laintiff had done every month for the last [four] and a half years." *Id.* at ¶¶ 18-19. However, on December 8, 2023, the Town Supervisor noticed that "Judge Nevers' signature did not seem the same as" usual. *Id.* at ¶ 19. The Town Supervisor then "called Judge Nevers' wife and inquired as to his ability to sign documents." *Id.* Judge Nevers' wife informed the Town Supervisor that Judge Nevers could not sign documents at that time because "he was incapacitated from a recent stroke." *Id.*

Byrne called Plaintiff on December 12, 2023, and told Plaintiff that "the New York State Police were at . . . Byrne's house[,] accusing her of check fraud." *Id.* at ¶ 20. Plaintiff told Byrne that she "knew nothing about that" and "explained that she gave the Town Supervisor the checks like [P]laintiff always did and continued on with her other duties." *Id.* The next Court night, December 14, 2023, Byrne "conducted business as usual," however, on December 28, 2023, Byrne "came into [P]laintiff's office and asked what hours [P]laintiff normally worked and left." *Id.* at ¶¶ 21-22.

On January 2, 2024, Byrne called Plaintiff and told her "not to do end of the month checks," but Plaintiff informed Byrne "that the checks were already completed." *Id.* at ¶ 23. On

the evening of January 2, 2024, the Town of New Lebanon Town Board ("the Town Board") held its organizational meeting. *Id.* at ¶ 24. At the meeting, the Town Board proposed re-appointing all current appointed employees, "as no department head submitted anything that would cause the [Town] Board not to re-appoint anyone." *Id.* "At that point, . . . Byrne stood up and said she wanted to replace current staff with new staff in Town Justice Court." *Id.* Pursuant to the Town Code, the Town Board could not re-appoint Plaintiff without Byrne's consent. *Id.* at ¶ 25. "Byrne represented [to the Town Board] that she had a conversation with Judge Nevers shortly after his stroke[,] at his rehabilitation facility[,] about replacing [P]laintiff as Clerk of the Town Justice Court." *Id.* at ¶ 26. Byrne's representation "was inconsistent with what [P]laintiff knew of Judge Nevers' condition[, as] . . . he took his oath of office in January[,] in a rehabilitation facility following his stroke, [had not] returned to the bench, and [was] poised to retire." *Id.* As a result of Byrne's refusal to consent to Plaintiff's re-appointment, the Town Board terminated Plaintiff's employment as the Clerk of the Town Justice Court and, "ultimately[,] reduced her to a part-time employee as Planning/Zoning Clerk." *Id.* at ¶¶ 25-27, 29.

On January 4, 2024, Byrne called the New York State Police, "accusing [P]laintiff of stealing court documents." *Id.* at ¶ 28. Plaintiff denied Byrne's allegations and, when the Town Supervisor later checked for the missing documents, the documents were found "exactly where" Plaintiff had indicated that Byrne "should have looked." *Id.* "Byrne took no action to correct the erroneous information she supplied to the State Police," and Plaintiff had to contact the State Police herself "so that their information could be updated." *Id.*

According to the amended complaint, "[a]t the time of [P]laintiff's termination . . . , the Town Supervisor, who is also a member of the Town Board, was aware of who filed the complaint, the content of [the complaint], and that [P]laintiff's cooperation with the Commission

4

. . . was the most likely reason for . . . Byrne's unwillingness to consent to the re[-]appointment of [P]laintiff." *Id.* at ¶ 30.

Through this action, Plaintiff brings two causes of action, alleging, *inter alia*, (1) First Amendment retaliation because Defendants, acting in concert, and under color of state law, terminated Plaintiff in retaliation for Plaintiff providing "truthful information about cases handled by . . . Byrne to[,] and at the request of[,] the . . . Commission . . . and for [P]laintiff telling . . . Byrne that [P]laintiff could not divulge . . . the identity of [the complainant]," *id.* at ¶¶ 34-45; and (2) retaliation, in violation of Section 75-b, as Defendants, acting in concert, terminated Plaintiff's employment "because of truthful statements she made to a governmental body," *id.* at ¶¶ 47-58.

In Byrne's motion to dismiss, Byrne argues that Plaintiff's First Amendment retaliation claim must be dismissed because Plaintiff has failed to allege the existence of protected speech or personal involvement by Byrne, and that Plaintiff's Section 75-b claim must be dismissed because Byrne, an individual defendant, cannot be liable under Section 75-b because she is not a "public employer." Dkt. No. 16-1 at 3-6. Byrne also argues that Plaintiff's Section 75-b claim must be dismissed because she failed to file a notice of claim and that the First Amendment claim, as against Byrne in her official capacity, must be dismissed because it is duplicative of Plaintiff's claim against the Town. *Id.* at 7. The Town contends, in its motion to dismiss, that Plaintiff's First Amendment retaliation claim must be dismissed because Plaintiff fails to allege that she engaged in protected speech and has not alleged that her conduct had expressive purpose. Dkt. No. 17-1 at 9-14. The Town also argues that Plaintiff's Section 75-b claim must be dismissed because Plaintiff fails to allege that she disclosed, to a governmental body, information "which she truly believed to be an improper governmental action or regarding a violation of law, rule, or

5

regulation that endangers public health or safety," and, separately, that Plaintiff's failure to file a notice of claim is fatal to her Section 75-b claim. *Id.* at 14-16.

### III. DISCUSSION

**A.     Legal Standard**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement of relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to

relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

B.     **First Amendment Retaliation Claim**

The Town contends that Plaintiff's First Amendment retaliation claim must be dismissed because Plaintiff was not acting as a private citizen when she provided the case files to the Commission's representative.  *See* Dkt. No. 17-1 at 11-13.  Further, the Town argues that Plaintiff has not sufficiently pleaded that her act of supplying the case files had an expressive purpose.  *Id.* at 13-14.  Relatedly, Byrne contends that Plaintiff's "acts of providing files[,] upon a governmental agency's request[,] and refusing to divulge [the identity of the] complainant based on the governmental agency telling [her] not to, are not the type of expressive speech protected by the First Amendment."  Dkt. No. 16-1 at 4.  Plaintiff responds that she spoke on a matter of public concern when she told Byrne that she could not provide details of the Commission's investigation and that, because such speech was not compelled by her job duties, the First Amendment prohibited Defendants from retaliating against her for refusing to comply with Byrne's demand. Dkt. No. 18-4 at 2-8.

Plaintiff brings her First Amendment Retaliation claim pursuant to Section 1983.  Section 1983 provides a private cause of action for individuals to sue a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

To establish a First Amendment retaliation claim, a public employee must prove that: "(1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of

public concern; (2) they suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (citations omitted).[2]  "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  However, if a public employee is not speaking pursuant to her official duties, the analysis is different: "[A]lthough a governmental entity enjoys significantly greater latitude when it acts in its capacity as employer than when it acts as sovereign, the First Amendment nonetheless prohibits it [generally, subject to certain defenses,] from punishing its employees in retaliation for the content of their speech on matters of public importance." *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 211 (2d Cir. 2002) (collecting cases).

Courts conduct a two-step inquiry to determine whether a public employee's speech is protected: "[t]he first requires determining whether the employee spoke as a citizen on a matter of public concern."  *Garcetti*, 547 U.S. at 418 (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)).  "This step one inquiry in turn encompasses two separate subquestions: '(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke "as a citizen" rather than solely as an employee.'" *Matthews v. City of N.Y.*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)).  An employee "speaks as a citizen" if the speech falls outside the employee's "official

---

[2]  Defendants do not argue that Plaintiff did not suffer an adverse employment action, nor that her alleged speech was a motivating factor in the adverse employment action.  *See generally*, Dkt. Nos. 17-1, 18-4.  Therefore, only whether Plaintiff engaged in constitutionally protected speech is presently at issue.

8

responsibilities," and if a "civilian analogue" to the speech exists. *Id.* at 173 (quotation and internal quotation marks omitted). Whether a plaintiff spoke as an employee and not as a citizen is "largely a question of law for the court." *Jackler*, 658 F.3d at 237.

To determine whether a public employee speaks pursuant to her official duties, courts "examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two," along with other contextual factors such as whether the plaintiff's speech "was also conveyed to the public." *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012). "This objective, practical inquiry should take into account the fact that a public employee's speech 'can be pursuant to' [her] 'official job duties even though it is not required by, or included in, [her] job description, or in response to a request by the employer.'" *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 83 (2d Cir. 2022) (quoting *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010) (internal quotation marks omitted)). "As [the Second Circuit] has previously explained, speech may be pursuant to an employee's official duties when it is part-and-parcel of the employee's concerns about [her] ability to properly execute [her] duties." *Id.* (quotation and internal quotation marks omitted).

By way of analogy to the facts of this case, in *Ross*, the Second Circuit found that a school district payroll clerk typist, who independently reported purported misconduct, did not engage in protected speech because, *inter alia*, the typist acquired all of the information she reported during her normal work duties. *Ross*, 693 F.3d at 306. Specifically, the typist raised concerns with the school district superintendent that certain district payments were improper. *Id.* at 302-03. The typist was eventually suspended without pay and, thereafter, wrote a letter "on her personal stationary" to the Board of Education in which she acknowledged her position as an employee of the school district but explained that she was "writing on a personal note" to express her

frustration that her supervisor was not taking appropriate action to remedy the alleged improper payments. *Id.* at 303-04. After the Board received the letter, it voted to terminate the typist. *Id.* at 304. The Second Circuit held that the typist's reporting of "pay irregularities to a supervisor was one of her job duties" because "she acquired all of the information she relayed . . . in the ordinary course of performing her work, and she was not able to meet her responsibility of balancing the payroll without resolving pay requisition irregularities." *Id.* at 306. The Second Circuit also held that the typist's decision to take her concerns outside the typical chain of command did not alter its holding, nor did the typist's own characterization of her speech as being "on a personal note." *Id.* Lastly, the Second Circuit noted that the typist "never attempted to communicate her complaints to the public." *Id.*

Likewise, here, Plaintiff's speech formed part of her official duties and did not constitute protected citizen speech. Plaintiff alleges that she was neither an employee of the Commission nor New York State Office of Court Administration and that her job duties did not require her to report to the Commission. *See* Dkt. No. 13 at ¶ 37. However, the sole reason that the Commission's representative approached Plaintiff—at Plaintiff's office—was because, as Town Court Clerk, she had access to the case file documents at issue. *See id.* at ¶ 15. Plaintiff does not allege that she sought out the Commission to report misconduct as a private citizen; the Commission's representative came to Plaintiff's office on an official investigation and requested factual documents from the Town Court. *See id.* Further, Plaintiff does not even allege that she provided the documents out of a personal sense of obligation to further a matter of public concern, but merely because it was "required by law." *See id.*

Neither did Plaintiff's refusal to divulge information about the investigation to Byrne constitute protected citizen speech. Plaintiff's supervising judge approached Plaintiff at her

10

office, during working hours, and requested information about the interaction Plaintiff had with the Commission while Plaintiff was at work. *See id.* at ¶ 17. Plaintiff does not allege that she spoke with any person, besides Byrne, about the Commission's investigation. All of Plaintiff's alleged speech occurred at work, during work hours, concerning matters solely within the province of her responsibilities as Town Court Clerk. *See id.* at ¶¶ 15, 17. Indeed, as the Second Circuit held in *Weintraub*, "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub*, 593 F.3d at 203. Moreover"[t]he fact that there is no civilian analogue to [Plaintiff's] speech reinforce[s] [the Court's] conclusion." *Shara v. Me.-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 86 (2d Cir. 2022).

Therefore, the Court concludes that Plaintiff failed to state a viable First Amendment retaliation claim.[3]

**C.    Section 75-b Claim**

Plaintiff's remaining claim, for violation of Section 75-b, is a state-law cause of action. When a federal court dismisses the only federal-law cause of action, it may, in its discretion, decline to continue to exercise supplemental jurisdiction over the remaining state-law causes of action. *See* 28 U.S.C. § 1367(c)(3); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). In making that discretionary decision, a district court must balance judicial economy, convenience, fairness, and comity. *Id.* "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to

---

[3] As Plaintiff's speech was made pursuant to her official duties and thus not constitutionally protected, the Court does not address the question of whether Plaintiff's speech constituted a matter of public concern nor does the Court address the other necessary elements of a First Amendment retaliation claim. *See D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 354 n.7 (S.D.N.Y. 2010), *aff'd*, 462 Fed. Appx. 79 (2d Cir. 2012).

11

exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, the Court dismisses the sole federal-law claim at the pre-answer motion to dismiss stage and the parties have not yet begun discovery. Therefore, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law cause of action and dismisses the amended complaint in full.[4]

## IV. CONCLUSION

After careful review of the pleadings, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Byrne's motion to dismiss (Dkt. No. 16) and the Town's motion to dismiss (Dkt. No. 17) are **GRANTED**; and the Court further

**ORDERS** that Plaintiff's First Amendment retaliation claim is **DISMISSED with prejudice** and Plaintiff's Section 75-b claim is **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's cross-motion (Dkt. No. 18) is **DENIED** as moot; and the Court

---

[4] The Court notes that even if it decided to retain jurisdiction over Plaintiff's Section 75-b claim, such claim would likely be subject to dismissal for failure to file a notice of claim. *See Arnold v. Town of Camillus*, 222 A.D.3d 1372, 1375-76 (4th Dep't 2023) (holding that "the language of Town Law § 67 is . . . broader than its General Municipal Law counterpart because it also includes any claim against a town defendant for damages for a 'wrong . . . to person,'" and, dismissing employment retaliation claim for failure to file a notice of claim). Additionally, Plaintiff's cross-motion to file a late notice of claim is denied by virtue of the Court declining to exercise jurisdiction over the Section 75-b claim; however, regardless, this Court does not have the ability to grant such relief. *See Washington v. Borough of Manhattan Cmty. Coll.*, No. 16 Civ. 6168, 2016 WL 7410717, *2 (S.D.N.Y. Dec. 21, 2016) ("Under New York General Municipal Law § 50-e(7), an application for the filing of a late notice of claim must be made in state court"); *Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 260 (S.D.N.Y. 1989) ("Until the state legislature amends § 50–e(7) to include federal trial courts, we have no choice but to dismiss for lack of jurisdiction [P]laintiff's application to file a late notice of claim").

further

ORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 06, 2024
       Albany, New York

Mae A. D'Agostino
U.S. District Judge